Charles A. Loreto, J.
Defendant moves for dismissal of the fourth amended complaint pursuant to subdivision 4 of rule 106 of the Rules of Civil Practice or for the elimination of 19 of the paragraphs, pursuant to rule 103, or for dismissal of the complaint pursuant to subdivision 5 of rule 107.
This is plaintiff’s fourth amended complaint, the first three pleaded complaints having been dismissed by the court.* (1) (2) (3) Plaintiff alleges that in or about March, 1942, plaintiff’s assignor and the deceased Serge Rubinstein entered into a joint venture for the purpose of acquiring the American assets of Chosen Corporation, Ltd., the contracting parties agreeing to supply all of the required funds and credit necessary for such purchase and acquisition and to advance moneys to guarantee performance and payment of obligations, the assignor specifically agreeing to make guarantees, advance credit and negotiate agree- *336 meats necessary to accomplish the venture’s purpose, the parties agreeing to contribute to the venture their personal efforts and the shares of stock of Chosen Corporation, Ltd., and of all other corporations owned by the respective partners; that if the American assets were acquired by the assignor in his individual name and capacity he would hold them as trustee for the benefit of the venture until an accounting could be made, and if such assets were acquired by a corporation that it would hold the assets as a custodian or depository for the venture until an accounting could be made; the contracting parties agreeing to share all losses of the venture and to share the property and proceeds from whatever source derived of the joint venture, on the basis of 49% to Rubinstein, 49% to the assignor and 2% to Rubinstein’s wife.
As to the services it is alleged that the assignor, from March, 1942 until January, 1943, negotiated for the purchase of the American assets with named persons, including the attorneys-in-fact for Chosen Corporation, Ltd. In January, 1943, the London solicitors of Chosen accepted the offer of the Pan-Pacific Company, Inc., to purchase the American, assets in its name, or Mountbreak Corporation, for $800,000, the assignor guaranteeing performance of the Pan-Pacific Company, Inc., Mount-break Corporation and Midway-Victory Oil Corporation and deposited $5,000. The assignor and Rubinstein agreed and caused the names of the Pan-Pacific Company, Inc., Mountbreak Corporation and Midway-Victory Oil Corporation to be attached to the agreement to the end that the nominee appointed pursuant to the agreement should acquire legal title to the American .assets, with performance and payment by the nominee guaranteed by the assignor.
The proposal was finally reduced to formal documents designating Mountbreak Corporation as the nominee to take title to the American assets and on October 17, 1943, the stockholders of Chosen Corporation, Ltd., confirmed the acceptance of the offer and approved the sale of the American assets to Mount-break Corporation for $800,000.
Mountbreak Corporation was a corporation which Rubinstein bad organized. Rubinstein was, and his estate continued to be, the owner of all of the outstanding shares of Mountbreak until the dissolution of the corporation when its assets were distributed to the executors of the estate and the defendant surviving executor now owns and holds the assets.
After the agreement on October 17,1943 and on November 11, 1943, the Chancery Division of the High Court of Justice of England ordered Chosen Corporation, Ltd., to be placed in *337 receivership. Thereupon the assignor undertook further negotiations with the receiver and the receiver finally came to agreement with Mountbreak, which, in turn, received the approval of the Companies Court of the Chancery Division of the High Court of Justice of England.
By the agreement with the receiver the assets specified in the schedules attached thereto and which were acquired by Mount-break are the American assets of Chosen. Also by that agreement the assignor guaranteed payments by Chosen to creditors, of legal fees including that of the official receiver, as well as payments of the principal amounts due. The foregoing has been alleged by plaintiff.
Defendant now argues that: “ At most the complaint alleges an oral contract between Seagraves and Rubinstein to acquire the American assets and a failure to do so possibly giving rise to an alleged breach of contract. But it does not allege the acquisition of the assets by them and their joint use in a joint venture entitling Seagraves to an equity accounting of the assets and their proceeds.’’ And further that: “in the absence of a joinder of property no joint venture arises * * * where
two or more parties use a corporation to carry out a business venture as a matter of law one party cannot seek from another an equity accounting as for a joint venture.” Finally that: ‘ ‘ In these circumstances an agreement to conduct a corporate enterprise, and not a joint venture commingling the property of Rubinstein and Seagraves, is alleged.”
Although the authorities hold that where a corporation is used as a vehicle for the conduct of a business venture, the individuals participating may not look to one another for an accounting, that is not the law where the corporation is wholly owned by one of the joint venturers and constitutes his alter ego (Brady v. Erlanger, 165 App. Div. 29; Manacher v. Central Coal Co., 284 App. Div. 380, 386, affd. 308 N. Y. 784).
In the light of the allegations now set forth in the complaint, it clearly appears that the defects heretofore found in the earlier pleadings have been cured. The terms of the joint venture are set forth. Investment of the assignor’s time, skill and money in the joint venture is shown, resulting in the acquisition of the indicated properties by a corporation wholly owned by the deceased, as nominee on behalf of the joint venture. Such acquisition was in pursuance of and for the purpose of the joint venture and in such circumstances as to warrant, for the purpose of pleading, the right to maintain the action upon the basis that the joint venture did eventuate and survive. These are the matters as to which the Appellate Division found the second amended complaint to be deficient (3 A D 2d 902).
*338 The defects found to exist in the third amended complaint pertain to the failure to delineate the creation of the partnership and the relationship of the several alleged agreements as either separate and independent or as implementation of the basic claimed agreement of joint venture. Certainly, factual allegations have now been set forth which fulfill the requirements of a good pleading.
The allegations of paragraph 8 are indeed conclusory, but the seven subdivisions thereof supply sufficient ultimate facts. The allegations of paragraphs 9 and 10 are relevant to the alleged claim that the assignor rendered services in negotiation. In alleging in paragraph 12 some of the services rendered, it is not improper or prejudicial to state that they were so rendered pursuant to the joint venture.
With respect to Exhibit A attached to the complaint, it does not control the allegations in paragraphs 14 and 15 relating to the fact that negotiated agreements were made in implementation of the joint venture. The same is true with respect to paragraphs 17 and 19 and Exhibit B.
The allegations of paragraphs 18, 23, 30 and 31 are essential to link the joint venture with the assets as held and not conclusory or are elsewhere supported by factual allegations. Paragraph 24 is not repetitive of paragraph 21 since two schedules are involved. The reference to joint venture in paragraphs 25 to 27 is indeed conclusory, but unavoidably for obviously the already stated terms of the joint venture are not to be repeatedly set forth. The allegations of paragraphs 29 and 32 are not in any way improper and flow from the remaining allegations. The same is true with respect to the claimed words of conclusion to which objection has been directed.
With respect to the application for dismissal upon the ground that the maintenance of the action is time-barred, defendant argues that there is set forth in the complaint the existence of a contract to acquire certain properties, breached by the defendant, and accordingly the cause is subject to the 6-year Statute of Limitations; and further, that the fourth amended complaint seeking to spell out an equitable cause of action, fails to do so. However, if a joint venture exists, as plaintiff alleges, no adequate remedy at law exists, then the 10-year statute is applicable and not the 6-year statute. Since plaintiff brings himself into equity at least upon a colorable claim, defendant will be adequately protected against any eventuality upon trial upon then moving for amendment of his answer to plead the 6-year statute, if necessary. The motion is in all respects denied.

 Footnotes 1, 2 and 3:
(1) The original complaint was dismissed for insufficiency and in dismissing the first amended complaint the court said: “ Apparently plaintiff intends by the allegations of the complaint in paragraphs first through eighth thereof to set forth a joint venture but fails completely to do so. * * * The allegations of paragraph ninth which connects the preceding paragraph with the succeeding paragraphs, have the vice of relying on the claimed joint venture which remains unspecified. The same is true of the allegations of paragraph thirteenth.”
(2) The second amended complaint was dismissed and in affirming the order of dismissal the Appellate Division said (3 A D 2d 902): “ The complaint is insufficient to allege the terms of the joint venture or to connect the purchase of the property or the later action of Rubinstein with the joint venture. For example: It is not clear whether plaintiff’s assignor did invest his time, sMll and money in the alleged joint venture and, if so, to what extent and in what manner. The subject matter of the joint venture is stated to be ‘American assets’ of the Chosen Corporation, Ltd., but there are no allegations of ultimate fact setting forth clearly whether these assets ever became the property of plaintiff’s assignor and Rubinstein, or either of them. Without setting forth the relationship of plaintiff’s assignor and Rubinstein to Mountbreak Corporation, and the nature of the corporation’s ownership of the assets of the alleged joint venture, there is no showing that the joint venture eventuated. While the second amended complaint does not sufficiently allege facts to support the existence of the joint venture upon which the demand for an accounting is predicated, it cannot be said that if properly pleaded plaintiff’s only remedy would be an action for breach of contract which would be barred by the six-year Statute of Limitations.”
(3) The third amended complaint was dismissed and the court stated with respect to it that: “ It fails to delineate the creation of the claimed partnership and the rights and obligations of the partners thereof, the relationship of the several alleged agreements as either separate and independent or as implementation of the basic claimed agreement of joint venture, or the survival of any partnership after incorporation and transfer to the corporation of the subject matter of the claimed joint venture ”.